UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Teresa Jane Hagan, | ) C/A No. 5:13-1090-DCN-KDW |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )REPORT AND RECOMMENDATION |
| | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

   A.      Procedural History

On July 3, 2010, Teresa Jane Hagan ("Plaintiff") filed an application for DIB. Tr. 118.[1] Plaintiff had sufficient work credits to remain insured through September 30, 2011. Tr. 58, 61, 139. Her application was denied initially on December 3, 2010, and upon reconsideration on April 13, 2011. Tr. 64, 69. She filed a timely request for a hearing before an administrative law judge ("ALJ"). Tr. 71.

---

[1] "Tr." is an abbreviation for "Transcript of the Record" made before the Social Security Administration in connection with Plaintiff's claim for DIB. It is located on this court's docket at ECF No. 13.

On December 8, 2011, Plaintiff appeared before the ALJ in Charleston, South Carolina. Tr. 26. The only testimony at the ALJ hearing came from Plaintiff upon questioning by her legal counsel and by the ALJ. Tr. 31-56. The ALJ denied Plaintiff's application in a written decision dated March 19, 2012. Tr. 10-25. Plaintiff then requested review by the Appeals Council. Tr.8. The Appeals Council denied Plaintiff's request for review and notified her of its decision on February 27, 2013. Tr. 1-7. The Appeals Council's denial rendered the ALJ's decision the final administrative action of the Commissioner for purposes of judicial review. Tr. 1. On April 23, 2013, Plaintiff filed her Complaint in this court seeking judicial review of the Commissioner's administrative determination. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was fifty-two years old at the time of the hearing. Tr. 32. She has a tenth grade education and had not attained her GED at the time of the hearing. Tr. 32. Plaintiff's last work was at a grocery store deli counter, cutting deli meat and serving hot food. Tr. 32-33. Before the deli job, Plaintiff worked as a shift manager in a bingo parlor. Tr. 33. Plaintiff stated that she stopped working at the deli job when she was laid off because "they didn't think [she] could perform the job as they needed [her] to." Tr. 35.

C.    The Administrative Hearing

1.    Plaintiff's Testimony

Plaintiff appeared with counsel at her administrative hearing on December 8, 2011. Tr. 26. Plaintiff amended her alleged onset date from December 2007 to June 1, 2010. Tr. 30. Plaintiff testified that her former job of shift supervisor at a bingo parlor consisted mostly of doing paperwork and doing "a lot of lifting too." Tr. 33. According to Plaintiff, the lifting involved in the

2

bingo parlor job consisted of lifting and carrying cases of bingo sheets. *Id*. She stated that other workers on earlier shifts would try to get most of that lifting done because they knew she had "a little problem lifting because of bladder surgery [she] had before." Tr. 33-34.

Plaintiff testified that she was laid off from her subsequent job at the grocery store deli because she could no longer perform the job the way the store wanted it performed. Tr. 34-35. She testified that her knee was swelling and it was negatively impacting her ability to clean and lift. Tr. 35. She also stated that she started experiencing anxiety and stress related to dealing with customers during the time she worked in the deli. *Id*. Plaintiff testified that she had no insurance coverage when her knee was causing her problems in the deli, so she sought treatment at the emergency room. Tr. 36. She also testified that her doctor gave her samples of the medications she needed most because she could not afford them herself. *Id*.

Plaintiff stated that Dr. Campbell treated her for difficulty in breathing and diagnosed her with chronic obstructive pulmonary disease ("COPD") and asthma. Tr. 37-38. She further testified that her biggest barrier to working was osteoarthritis in her right knee and pain in her lower left back. Tr. 38-39. Plaintiff stated that her knee pain was triggered if she twisted the wrong way and that it worsened or improved depending on the "what the weather's like." Tr. 39. She testified that she could not kneel as she formerly could, but that her right knee pain "is not as bad" because she had surgery performed on the meniscus. Tr. 38. Plaintiff testified that Dr. Campbell told her that she has a "degenerative disc" in her back. Tr. 40. Regarding her breathing problems, Plaintiff testified that she has severe breathing problems, and that she used a breathing machine which had been prescribed for her years ago. Tr. 40-41. She also testified that she had her own room with a separate heater and air conditioner and that this separate bedroom set up helped manage her

3

symptoms. Tr. 41-42.

In addition to her physical problems, Plaintiff described insomnia that she believed was related in part to past abuse from her mother and ex-husband. Tr. 42-43. She stated that she could no longer handle stress as well as she could when she was younger, and that it was more difficult now that she became short of breath and was in pain. Tr. 43. Plaintiff stated that she also suffered from anxiety attacks and when she gets upset, she cries and stays in her room. Tr. 45. Describing her anxiety attacks, Plaintiff testified that she became short of breath, that she would shake and pant, and that it took her up to an hour to recover from one. Tr. 46-47. Plaintiff testified that during bouts of depression she stayed in her room about 80% of the time and would shut the blinds, lock the door, and not answer the phone so she would not have to be around other people. Tr. 45, 48-49.

Plaintiff estimated that she could stand for about five to ten minutes before needing to sit down. Tr. 49-51. She described needing to leave a pharmacy if the line was too long and having to use shopping carts to lean on and help her stand longer. Tr. 49-50. Plaintiff estimated that she could sit for about twenty to thirty minutes before she became "knotted up and in pain." Tr. 51. She testified that when she went shopping, she limited her trips to fifteen minutes and tried to park as close as possible, but that sometimes she became so winded walking into a store that she had to use her inhaler. Tr. 52. She testified that her husband does most of the grocery shopping, and that he does his own cooking and loads the dishwasher. Tr. 53.

Plaintiff further testified that she had recently been diagnosed with Hepatitis C which her doctor had told her was the cause of her persistent fatigue, and that she received vitamin B12 shots once per month which helped a little. Tr. 53. In response to further questioning by the ALJ,

Plaintiff clarified that she had undergone knee surgery on March 15, 2011. Tr. 54-55.[2] She also explained that she declined epidural injections offered to treat her back pain because she was told she was required to pay her share of the cost of those procedures up front. Tr. 55. Finally, Plaintiff told the ALJ that she was being treated for her panic attacks and depression by a nurse practitioner at her treating physician's office. Tr. 56.[3]

II.    Discussion

A.    The ALJ's Findings

In his March 19, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2010 through her date last insured of September 30, 2011 (20 CFR  404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: chronic back pain; status post left knee arthroscopy; and chronic obstructive pulmonary disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, frequently balance, and never climb ladders rope and scaffolds. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation,

---

[2] In her hearing testimony, Plaintiff stated that the surgery was performed by Dr. Kupperman on her right knee. Tr. 54. The ALJ found and the medical reports in the record show that the surgery was actually performed on her left knee. Tr. 15, 506-09.
[3] Plaintiff's treating physician was Patricia Campbell, M.D. Tr. 383-90.

and avoid all exposure to hazards such as machinery and heights.

6. Through the date last insured, the claimant was capable of performing past relevant work as a bingo shift manager. This work did not require performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2010, the alleged onset date, through September 30, 2011, the date last insured (20 CFR 404.1520(f)).

Tr. 15-21.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing

considerations and noting "need for efficiency" in considering disability claims). An examiner

must consider the following: (1) whether the claimant is working; (2) whether the claimant has a

severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[4] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step). A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpt. P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir.

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") which the Social Security Administration ("the Agency") considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R.§ 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at step three).

2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

    2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *see also Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775

(4th Cir. 1973).

  C.  Analysis

  Plaintiff argues that the ALJ's findings were not supported by substantial evidence and he erred by: (1) failing to properly define and assess Plaintiff's impairments at step two of the sequential analysis; (2) failing to properly evaluate the effect of her combination of impairments on her residual functional capacity ("RFC") at step three; and (3) failing to properly evaluate Plaintiff's and her treating physician's credibility in determining her ability to perform PRW at step four. Pl.'s Br. 9-16, ECF No. 18.

  1.  The ALJ's Determination of Plaintiff's Impairments

  Plaintiff first asserts that the ALJ's step two analysis is legally flawed and not supported by substantial evidence because he minimized and failed to properly name her exertional impairments when he called them "chronic back pain" and "status-post left knee arthroscopy" instead of using the actual medical diagnoses: "degenerative disc disease" and "facet arthropathy with contact on exiting nerve roots" and "degenerative joint disease [of the knee]." Pl. Br. 10, ECF No. 18. She further asserts that the ALJ's finding that her mental impairments were not "severe" is not supported by substantial evidence because, although he relied on Plaintiff's answers to an Agency questionnaire about her daily activities, he did not take into account the self-reported limitations on those activities shown in the same questionnaire or the limitations stated in Plaintiff's hearing testimony and shown in Plaintiff's treating physician's reports. *Id.* at 11. The Commissioner answers that the names used by the ALJ to describe Plaintiff's acknowledged "severe" exertional impairments are irrelevant because the ALJ's determination of the severity or lack of severity of Plaintiff's exertional and non-exertional impairments is supported by substantial evidence in the

9

record. Def.'s Br. 16, 18-19, ECF No. 20. Plaintiff responds that she was merely making a point that the ALJ minimized her back and knee impairments by making them sound like vague complaints, but the "ALJ misstated the evidence as to the functional limitations cause by [Plaintiff's] mental impairments." Pl. Resp. Br. 2, ECF No. 21.

The regulations provide steps that must be applied in evaluating mental impairments. *See* 20 C.F.R. § 404.1520a. The ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. § 404.1520a(a). Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to substantiate the presence of a medically determinable mental impairment. *Id*. § 404.1520a(b)(1). Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment. *Id*. § 404.1520a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. *Id*. § 404.1520a(d). The ALJ considers four broad functional areas in order to rate a claimant's degree of functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3); *see id*. Pt. 404, Subpt. P, App. 1, § 12.00C. The ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id*. § 404.1520a(c)(2); *see id*. Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id*.; *see* § 404.1520a(c)(4). The fourth functional area—episodes of decompensation— uses a four-point scale: none, one or two, three, and four or more. *Id*.

10

In the decision under review in this case, the ALJ stated that Plaintiff's back, knee, and breathing problems (which he labelled "chronic back pain; status post left knee arthroscopy; and chronic obstructive pulmonary disease") "more than minimally affect[ed her] ability to perform work-related activity . . ." and he found them to be severe. Tr. 15. Regarding her mental impairments, the ALJ acknowledged that her depression and anxiety were "medically determinable mental impairments . . . ," but he found that they were "nonsevere" because they "did not cause more than minimal limitation . . ." in her ability to perform work activities. *Id*. In his step two evaluation of Plaintiff's acknowledged mental impairments, the ALJ documented his application of the proper technique by incorporating pertinent findings and conclusions in his decision as to the degree of limitation in each of the four functional areas. Tr. 15. The ALJ noted that Plaintiff testified to significant activities of daily living such as taking care of her personal grooming, preparing simple meals, taking care of her dogs, driving her car, and doing simple household chores such as loading the dishwasher and doing small loads of laundry. Her testimony also revealed "mild limitation" in social functioning; "mild" problems with concentration, persistence, or pace; and she did not report, nor does the record contain evidence of, any episode of extended decompensation. Tr. 16. The ALJ cross-referenced to his RFC finding at step four of the sequential analysis and noted that it also included an assessment of the "degree of limitation [he] . . . found in the 'paragraph B' mental function analysis." *Id*.

Upon review of the record, the undersigned finds that the ALJ's use of more common terminology and not the actual medical diagnoses to describe or name Plaintiff's exertional impairments was not reversible error because he discussed the medical evidence about them and found them to be severe. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (harmless error for

ALJ to not reference one impairment at step two where that impairment and limitations and restrictions arising from it were discussed at step four of the sequential evaluation). Additionally, the undersigned finds that the ALJ's conclusion that Plaintiff's mental impairments were not severe is supported by substantial evidence. The ALJ considered the evidence and Plaintiff's testimony in his functional assessment. "Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation is of no moment." *Washington v. Astrue*, 659 F. Supp. 2d 738, 753 (D.S.C. 2009) (citing *Blalock*, 483 F.2d at 775). *See generally Jackson v. Astrue*, 8:08-2855-JFA, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to make a bridge between the evidence and its conclusions.") (internal quotation and citations omitted). Additionally, while it is necessary for the ALJ to make complete and comprehensive findings on the essential issues, the reviewing court may recognize and accept findings implicit in the decision taken as a whole. *See Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981); *see also Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). Accordingly, the undersigned finds Plaintiff's argument on this point is without merit because the ALJ adequately identified Plaintiff's severe exertional impairments, properly performed the special technique for assessing the severity of a claimant's mental impairments, and adequately documented his evaluation of Plaintiff's mental impairments.

2.     Step Three Findings

In her second point, Plaintiff alleges that the ALJ failed to properly consider and explain his decision regarding the extent to which her acknowledged mental impairments combined with her severe exertional impairments to limit her RFC. Pl. Br. 12-13, ECF No. 18. Further, Plaintiff

contends that, despite the lack of record evidence showing motor loss from her back problems, the ALJ should have found that the combination of her documented exertional and non-exertional impairments provided medical equivalence to Listing 1.04 ("Disorders of the Spine") and required a finding of disabled at step three. *Id.* The Commissioner answers that the ALJ's finding that Plaintiff's combination of impairments did not prevent her from doing "light work" is supported by sufficient analysis and substantial evidence. The Commissioner also contends that if any error was committed by the ALJ in his analysis of the combined effect of his impairment, such error was harmless. Def. Br. 19-23, ECF No. 20. Further, the Commissioner states that the ALJ's determination that Plaintiff's back problems did not meet the requirements of Listing 1.04 is supported by substantial evidence because the medical reports in the record do not show significant motor loss to the lower extremities or other evidence of the type of restrictions required to meet that Listing. *Id.* at 13-14, 19-28. Plaintiff responds that Listing 1.04(A) does not require the complete inability to ambulate, that the ALJ improperly rejected all evidence supporting Plaintiff's claims and accepted only evidence that would not support the claims, and failed to adequately show through his findings and conclusions how he considered Plaintiff's impairments in combination and found them not to be disabling. Pl. Resp. Br. at 3-4, ECF No. 21.

a.     The ALJ's Analysis of Plaintiff's Combination of Impairments

In evaluating a claim for DIB, the Commissioner is required to consider the combined effects of a claimant's impairments, and she must adequately explain her evaluation of the combined effects of those impairments. *See Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989); *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's

13

impairments, 42 U.S.C. § 423 (d)(2)(c) (1982), and a general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). In this regard, it has been held that a reviewing court is entitled take an ALJ's statements regarding his consideration of a combination of impairments as true unless circumstances exist that call such statements into doubt, and that an ALJ's discussion of the various steps of his analysis does not have to be made under a particular heading in the decision. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (taking the ALJ at his word when he stated that he considered all of the claimant's impairments in combination); *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (discussion and evaluation of evidence for a particular step of analysis does not have to be under a certain heading; decision as a whole is considered).

The ALJ also noted that he considered Plaintiff's hearing testimony about her daily activities and considered and weighed the credibility of the reports from Plaintiff's treating physician, Dr. Campbell, in light of other medical reports in the record that showed only mild impairment from the mental issues. *Id.* at 14-17, 19-28. Finally, the ALJ stated that he considered "the combined effects of the claimant's alleged impairments, both severe and non-severe, on [her] ability to work . . . ," but, specifically referencing his RFC decision set out in his Step 4 analysis, found  that Plaintiff's "ability to sustain consistent function . . ." was not impaired by the combined effect of the impairments. *Id.* at 17.

Although most of the ALJ's analysis of the record evidence regarding the combination of Plaintiff's impairments is contained in the portion of his opinion specifically addressing his step four findings, he does specifically state in his reasoning under the step three findings and conclusions that he considered the combined effects of each of Plaintiff's impairments, both

14

exertional and non-exertional and both severe and non-severe, in making his determination that Plaintiff retained RFC to perform some work and was not completely disabled. Tr. 17. It is noted that this court has found other ALJs' discussions of the effect of a claimant's combination of impairments sufficient in prior cases where the ALJs' discussions of a claimant's combination of impairments were no more explicit or detailed than is that of the ALJ in this case. *See, e.g.*, *Thornesberry v. Astrue*, No. 4:08-4075-HMH-TER, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010); *Ingram v. Astrue*, No. 3:07-cv-823, 2008 WL 3823859, at *2 (D.S.C. Aug. 12, 2008).

Following review, the undersigned finds that the ALJ's opinion that Plaintiff retained the RFC for light work is sufficiently detailed and explanatory, especially when supplemented by his discussion of record evidence under his step four analysis, to show that he gave the required consideration to the issue of whether or not Plaintiff's impairments in combination were disabling. Plaintiff's argument to the contrary is without merit.

b.    The ALJ's Determination Regarding Listing 1.04

The ALJ stated that he specifically considered whether Plaintiff's back problems met Listing 1.04, whether Plaintiff's left knee problems met Listing 1.02A, and whether her COPD and asthma met Listing 3.03, but found that none of the Listings were met under the medical evidence of record. Tr. 17. He found that the records failed to support the required muscle weakness, did not contain the required medical imaging, and did not show the required "inablility to ambulate effectively . . . ." *Id*. at 16-17. The ALJ set out the requirements of three different Listings, each involving one of the exertional impairments that he found to be severe (back, knee, and breathing), and specifically noted that the medical records and treatment notes made available to him did not show the extent of limitations required to satisfy any of the Listings or any greater limitations on

her ability to work than those found under the step four analysis. *Id.* The ALJ also specifically noted that the available medical reports and records did not contain conclusions or findings of the type of ambulatory or movement problems arising from Plaintiff severe back condition that were necessary to satisfy the requirements of Listing 1.04. *Id.* In her brief, Plaintiff asserts she "very nearly met Listing 1.04" and concedes she does not meet the requirement of motor loss in Listing 1.04A. Pl. Br. 12-13, ECF No. 18. "To meet the requirements of a listing, [a claimant] must have a medically determinable impairment(s) that satisfies *all* of the criteria in the listing." 20 C.F.R. § 404.1525(d) (emphasis added).

Upon review of the record, the undersigned finds that the ALJ's conclusion that Plaintiff's back condition did not meet the requirements of and were not the medical equivalent of Listing 1.04 is supported by substantial evidence.

3.     The ALJ's Determination the Plaintiff Can Perform PRW

Finally, Plaintiff alleges that the ALJ's decision that Plaintiff retained sufficient RFC to perform her PRW as a bingo parlor shift manager is not supported by substantial evidence because the ALJ improperly disregarded Plaintiff's testimony about the numerous limitations she has because of her combination of impairments and failed to consider Plaintiff's lack of funds as the reason for her failure obtain further and more consistent medical care. Pl. Br. 15, ECF No. 18. Plaintiff also contends that the ALJ's PRW finding is not adequately supported by substantial evidence where it was based solely on Plaintiff's own description of the bingo parlor work and on a Social Security examiner's report that was not fully completed. *Id.* The Commissioner answers that Plaintiff failed to sustain her burden on the PRW issue, and that the ALJ properly considered and determined both Plaintiff's and her medical providers' credibility regarding the nature and

extent of the limitations arising from her impairments. Def. Br. 24-27, ECF No. 20. The

Commissioner also states that the ALJ's decision on Plaintiff's PRW is adequately supported by

substantial record evidence from Plaintiff's own description of the duties she performed at her

bingo parlor job and by medical records showing that her limitations would not preclude her from

performing those duties. *Id*. at 28-29. Plaintiff responds that the ALJ erred by improperly

disregarding any testimony or evidence that was supportive of Plaintiff's assertions of substantial

limitations on her ability to work at any of her past jobs and that such error was not harmless. Pl.

Resp. Br. 4-6.

> Insofar as the PRW issue is concerned, SSR 82–62 provides:
>
> The claimant is the primary source for vocational documentation, and statements
> by the claimant regarding past work are generally sufficient for determining the
> skill level; exertional demands and nonexertional demands of such work.
> Determination of the claimant's ability to do PRW requires a careful appraisal of
> (1) the individual's statements as to which past work requirements can no longer be
> met and the reason(s) for his or her inability to meet those requirements; (2)
> medical evidence establishing how the impairment limits ability to meet the
> physical and mental requirements of the work; and (3) in some cases,
> supplementary or corroborative information from other sources such as employers,
> the Dictionary of Occupational Titles, etc., on the requirements of the work as
> generally performed in the economy.

SSR 82–62, 1982 WL 31386, at *3 (1982). A claimant bears the burden of demonstrating that her

impairment prevents her from performing her PRW. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.

1995). If a claimant can perform PRW either as she performed it or as it is generally performed in

the economy, the claimant is not disabled within the meaning of the Act. SSR 82–61, 1982 WL

31387, at *2 (1982).

Regarding the ALJ's consideration of opinion evidence, in evaluating all medical opinions,

an ALJ should consider several non-exclusive factors, including the consistency of the opinion

with other evidence and the degree to which the opinion is supported by the evidence. *See* 20 C.F.R. § 404.1527(c); *Johnson v. Barnhart*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). Evidence from a non-examining, non-treating physician can be relied upon when it is consistent with the record. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (citations omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 978-79 (8th Cir. 2003) (ruling requiring ALJ to accept as expert opinion evidence findings of a state agency medical consultant did not require ALJ to provide new medical evaluation for claimant); SSR 96-6p, 1996 WL 374180, at *2-3 (findings made by state agency physicians must be treated as expert opinion evidence).

Furthermore, in assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. *See Craig v. Chater*, 76 F.3d 585, 591-92 (4th Cir. 1996); *Mickles v. Shalala*, 29 F.3d 918, 919-20 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4).

In reaching his conclusion that Plaintiff's combination of impairments did not prevent her from performing her PRW as a bingo parlor shift manager, the ALJ stated he followed the required

two-step analysis of Plaintiff's subjective complaints of pain and limitation allegedly arising from her impairments. Tr. 18. He noted that he believed that Plaintiff had the physical or mental impairments that could cause the extent of pain and other non-exertional limitation of which Plaintiff testified, but he found that, in light of other record evidence, Plaintiff's subjective complaints were not fully credible. Tr. 18. He noted that even though Plaintiff testified that she had considerable limitations from her mental health impairments, she did not seek out therapy or treatment for them other than medication from her primary physician. *Id*. He also noted that she continued to smoke despite her alleged breathing problems and the recommendations from her doctors that she quit. *Id*. Furthermore, he noted that the medical records do not show that she was limited in her general functioning by her alleged mental impairments, that she did not pursue physical therapy or other more intensive treatment for her back problem, and that she did not return to her orthopedic surgeon for further care after what appeared to be successful surgery on her knee. Tr. 19.

The ALJ partially discounted Plaintiff's treating physician's report of Plaintiff's limitations wherein she opined that Plaintiff's back, knee, breathing, and mental impairments resulted in her being able to sit, stand, and/or walk no more than one hour in an eight-hour day; being able to lift and carry five pounds frequently and ten pounds occasionally; and being unable to handle stressful situations, Tr. 383-90, because he found them to be unsupported by the physician's own treatment notes or by the notes and reports of the other doctors in the record. Tr.19-20. The ALJ stated that he gave "significant weight" to the RFC opinions given by the state agency medical consultants that Plaintiff could do "light work" because, according to the ALJ, those opinions were supported by the medical evidence as a whole. Tr. 20. Finally, the ALJ stated

that he would not find Plaintiff "incapable of all work activity" and found that she was capable of performing her PRW "as she performed it." Tr. 20-21. The ALJ assessed the credibility of Plaintiff's subjective symptoms, determined that more weight should be given to the state agency medical consultants' opinions regarding the limitations from Plaintiff's impairments than that provided by Plaintiff's treating physician, and found that Plaintiff retained an RFC for "'light work' as defined in 20 C.F.R. 404.1567(b)." Tr. 17. The ALJ applied the correct legal framework and complied with SSR 82–62 because he made a finding of fact as to Plaintiff's RFC, Tr. 17-20, determined the demands of Plaintiff's past work as a bingo parlor shift manager through Plaintiff's own testimony and the report of a state agency vocational consultant, Tr. 21, 33-34,154, and determined that Plaintiff's RFC would permit her to return to her PRW. Tr. 21.

The undersigned has reviewed the evidence in the record and the ALJ's discussion and application of it to Plaintiff's claims and finds that there is substantial evidence in the record to support the ALJ's opinion that Plaintiff did not sustain her burden of showing that she cannot perform her PRW. The ALJ's finding that Plaintiff can perform her PRW as a bingo parlor shift manager as she, herself, testified she performed it is supported by substantial evidence. To the extent Plaintiff's argument is based on her contention that the ALJ improperly assessed her mental impairment and other subjective symptoms, the undersigned recommends rejecting that argument for the reasons stated in the preceding sections of this Report. Moreover, to the extent that Plaintiff contends that proper legal guidelines were not followed and that substantial evidence does not support the ALJ's decision, the undersigned finds that the ALJ's credibility analysis of both Plaintiff's testimony and the reports of her treating physician and his reliance on Plaintiff's own testimony and responses to Social Security questionnaires about the nature of her duties requires a

recommendation that those arguments be rejected as well.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's mental impairments, and the decision is supported by substantial evidence. Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

June 2, 2014                                    Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

21